IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-193-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  MICHAEL BROWNE,

    Defendant.

---

### GOVERNMENT'S SENTENCING STATEMENT

---

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following sentencing statement with respect to defendant MICHAEL BROWNE. For the reasons described below, the Government respectfully requests that the Court sentence the defendant to 30 months' imprisonment, which is a sentence at the bottom of the defendant's Guidelines range.

### Facts

    The charges in this case resulted from two seemingly disparate set of facts. First, on February 24, 2022, law enforcement officers executed a search warrant at a home and associated property in Penrose, Colorado in an unrelated investigation. The defendant was found living on a trailer on the property. In a safe in the defendant's room, officers located a .357 Smith and Wesson handgun along with papers belonging to the defendant. Some of the papers appeared to be documents associated with the next phase of the defendant's criminal activity—that is, obtaining a fraudulent South Dakota driver's license to use in furtherance of obtaining a fraudulent U.S. passport, as

1

follows:

 

Though law enforcement seized the firearm, the defendant was not arrested on February 24, 2022.

The above-pictured South Dakota paperwork—which was in the defendant's own name—began to make sense to the Government during the next phase of its investigation. Although the defendant ultimately obtained a fraudulent South Dakota driver's license in another person's name in March 2022, it appears that he first did a "test-run" in South Dakota in July 2021. On that date, the defendant used his real name to obtain a South Dakota driver's license, asserting that he lived at a particular P.O. box address in Spearfish, South Dakota.

Next, on March 16, 2022—so about three weeks after execution of the search warrant—the defendant went to South Dakota to obtain another South Dakota driver's

license, this time in the name of "Devon Fish." In support of this application, the defendant provided the real Devon Fish's name, date of birth and social security number. The defendant again used a P.O. box in Spearfish, South Dakota as his address (the "South Dakota Address"). That same day, the South Dakota Department of Public Safety issued a driver's license to the defendant bearing the defendant's photo, but with Fish's name and date of birth. Devon Fish is a real person living in Colorado who the Government believes was complicit in the defendant's scheme.

The next day, on March 17, 2022, the defendant travelled to El Paso, Texas, to apply for a U.S. passport in Fish's name. In the application, the defendant provided the name "Devon Stuart Fish" and Fish's date of birth and social security number, but his own photograph, as follows:



In support of the application for this U.S. passport, the defendant provided authorities

3

with the South Dakota Address, Fish's Colorado birth certificate, and the fraudulently-obtained Devon Fish South Dakota license. As a result of the defendant's fraudulent application, he was issued an expedited U.S. passport in Devon Fish's name that same day, on March 17, 2022 (the "Fish Passport").

Finally, two days later, on March 19, 2022, the defendant used the passport to travel from the Denver International Airport to Munich, Germany. He eventually returned to the United States on September 8, 2022, and was arrested at the Houston airport. Among other things, he had in his possession the Devon Stuart Fish South Dakota driver's license and the fraudulently-obtained U.S. passport, as follows:





To complete the identity theft trifecta, he even had a Costco card in Fish's name, but bearing his own photo:

 

## Procedural History

The defendant was indicted for passport and identity theft-related offenses on June 9, 2022. [ECF #1]. On February 1, 2023, the defendant agreed to the filing of an information charging passport fraud, identity theft, and felon in possession of a firearm. [ECF #27]. As compared to the indictment, the information dropped a count charging a violation of 18 U.S.C. § 1028A, which carries a two-year mandatory minimum. The

5

defendant pled guilty to the charges in the information that same day, pursuant to a plea agreement. [ECF #30].

The defendant has been in custody since his arrest.

## Guidelines Calculation

In the plea agreement, the parties calculated the defendant's Criminal History Category as II and his offense level as 18, for a Guidelines range of 30-37. The PSR, however, determined that the defendant is in Criminal History Category III. PSR ¶ 89. The defendant filed an objection to the PSR's CHC calculation. [ECF #36]. As of the filing of this sentencing statement, it is the Government's understanding that the Probation Office is going to revise its CHC calculation to II, for a Guidelines range of 30-37 months. The Government believes that CHC II, offense level 18, for a Guidelines range of 30-37 months is the appropriate calculation.

## Application of the 18 U.S.C. § 3553(a) Factors

The Government respectfully asks the Court to sentence the defendant at the bottom of his Guidelines range to a sentence of 30 months' imprisonment.

A. *Nature and Circumstances of the Offense*

In the span of less than a month, the defendant managed to commit numerous serious felonies. First, on February 24, 2022, he was found to be a felon in possession of a firearm, after secreting a gun inside a safe where he was living. Though it is not clear why the defendant unlawfully possessed the firearm, there is no possible justification for a twice-convicted felon to be in possession of a dangerous weapon.

Then, approximately three weeks later, the defendant took extraordinary steps to flee the United States. Taking advantage of what appears to be the ease with which

someone professing to live at a P.O. box can obtain a driver's license in South Dakota, the defendant first obtained an ID using his friend Devon Fish's identification documents. The very next day, he travelled over 1,000 miles to El Paso, Texas, to obtain a rush U.S. passport. Two days after that, he left the country from Denver—not to return for six months.

What is unusual about all of this is it is not clear *why* the defendant took the extraordinary steps that he did to flee the country. And, make no mistake—he did *flee*. After all, there was nothing prohibiting the defendant from obtaining a passport in his own name. Yet, instead, he elected to use the identification documents belonging to a fellow male stripper to obtain a fake passport and abscond from the United States for six months. More oddly, it appears that the defendant had been planning his flight since *before* the execution of the February 24, 2022, search warrant during which the firearm was discovered. As noted above, in July 2021 the defendant did a "test run" in South Dakota and applied for a license in his own name (also fraudulent, since he did not actually live in Spearfish, South Dakota). It seems that he wanted to make sure, when the time was right, that he would know the process for obtaining a South Dakota license intimately enough that he would be able to efficiently obtain a license in Fish's name.

What does this mean? It means that the impetus for the flight likely *was not* the February 24, 2022, search on its own since he had taken steps to plan his escape before that. Perhaps the impetus was something law enforcement found during the search—something the defendant had hoped to keep hidden, but always worried would be discovered. In the end, though, this is all speculation; only the defendant knows for sure why he took the extraordinary and unusual steps to escape the United States as

Devon Fish.

What matters for the purposes of sentencing, though, is that the defendant flagrantly and with meticulous planning violated the laws prohibiting someone from using someone else's identity to obtain a U.S. passport. This is a serious offense and should be punished as such.

  B. *History and Characteristics of the Defendant*

As described in the PSR, the defendant has accumulated a somewhat lengthy criminal history. His first felony conviction was in 2013, when he was convicted of leaving the scene of an accident involving serious bodily injury. He was unable to successfully complete his four-year deferred sentenced and was subsequently sentenced to three years' probation. PSR i¶ 46.

In 2018, the defendant was convicted of felony menacing in a domestic violence incident that also resulted in the entry of an order or protection. According to the PSR, the defendant physically assaulted his then-girlfriend by preventing her from leaving a room and then punching her repeatedly in the face, knocking her down, and shoving his fingers down her throat. PSR ¶ 49. For this offense, the defendant was sentenced to two years' probation.

Despite his numerous arrests and convictions, the defendant has served scant time in jail. As the PSR correctly notes, "the leniency extended to him by the criminal justice system over the years has not served a deterrent value." PSR Ex. A. The defendant's brazen conduct in the instant case certainly suggests that he believes that he will suffer no consequences for his criminal acts. A sentence of incarceration here will, appropriately, put an end to that notion.

*C. The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)*

The requested sentence will also reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide deterrence to criminal conduct.

First, as noted above, this is a defendant who is in dire need of deterrence from the criminal justice system. Although he may argue that some of his offenses are not particularly serious, the Government disagrees. It is true that many of his convictions are traffic-related offenses, but it is also clear that the defendant is a menace on the road and poses a danger to others. Moreover, his two prior felony convictions are undeniably serious—and the most serious offense of all is the one he committed last-in-time, at age 28, when he violently assaulted his girlfriend.

Second, and for many of the same reasons, the defendant could also benefit from a sentence that will instill in him a healthy respect for the law. Moreso than any of the offenses that make up his criminal history, the instant offenses demonstrate that the defendant believes that the laws and rules of the United States do not apply to him. The casualness with which he obtained fake documents, and possessed a firearm, illustrates that the defendant believed he could do what he wanted, when it served his purposes, regardless of whether he was breaking the law.

Finally, general deterrence has a role in sentencing here. The federal offenses that the defendant committed—both of them—have real public safety implications. Such implications of a felon possessing a firearm are obvious. In addition, as a society, it is important that we can identify the people living among us and ensure that they are

who they say they are when they drive cars, get into airplanes, and cross our borders. A sentence of incarceration here will send the message that the United States takes document-related offenses seriously and will punish offenders accordingly.

## Conclusion

The Government respectfully requests that the Court sentence the defendant to 30 months' imprisonment to be followed by three years of supervised release.

Respectfully submitted this 7th day of April, 2023.

                COLE FINEGAN
                United States Attorney

By:   *s/ Andrea Surratt*
       Andrea Surratt
       Assistant United States Attorney
       U.S. Attorney's Office
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone: (303) 454-0100
       e-mail: Andrea.Surratt@usdoj.gov
       Attorney for the Government